## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**RONALD C. HILL,**

     Plaintiff,

v.                                         Case No. 2:22-cv-39-SPC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Ronald C. Hill seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 12), [1] and the parties filed a joint memorandum (Doc. 24). As discussed in this report, the decision of the Commissioner should be affirmed.

### I.  Eligibility for Disability Benefits and the Administration's Decision

#### A.  Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months. [2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On December 17, 2019, Hill applied for disability insurance benefits. (Tr. 81, 91, 93, 102, 117). He asserted an onset date of May 30, 2019, alleging disability due to the following: chronic obstructive pulmonary disease, heart problems, pain in both shoulders and back, sleep apnea, and asthma. (Tr. 81-82, 92-93, 101-02, 109). As of the alleged onset date, Hill was 58 years old with a high school education. (Tr. 32, 81, 92, 101-02, 242). Hill previously worked as a corrections officer. (Tr. 89, 99,

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 404.1505.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 404.1594(b)(4) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 404.1511.

115).

On behalf of the administration, a state agency[5] reviewed and denied Hill's application initially on April 23, 2020, and upon reconsideration on September 24, 2020. (Tr. 81-90, 101-116). At Hill's request, Administrative Law Judge (ALJ) Mario G. Silva held a hearing on February 4, 2021. (Tr. 40-80). On February 26, 2021, the ALJ issued an unfavorable decision finding Hill not disabled. (Tr. 13-34). Hill's timely request for review by the administration's Appeals Council was denied. (Tr. 1-7). Hill then brought the matter to this court, and the case is ripe for judicial review.

## C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a

qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Hill had not engaged in substantial gainful activity since May 30, 2019, the alleged onset date. (Tr. 18). At step two, the ALJ characterized Hill's severe impairments as: chronic obstructive pulmonary disease, asthma, cardiac arterial disease, plantar fasciitis, bilateral shoulder joint disease, and obesity. (Tr. 18). At step three, the ALJ determined Hill did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 20).

As a predicate to step four, the ALJ arrived at the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry up to 20 pounds occasionally, lift and carry up to 10 pounds frequently; stand and walk for up to six hours and sit for up to six hours for a combined total of eight hours per day with normal breaks; no more than occasional climbing ladders, ropes, or scaffolds; frequent climbing ramps or stairs; no limitations with respect to balance; frequently stoop, kneel, or crouch; occasionally crawl; overhead reaching bilaterally is limited to occasional; reaching forward and to the side is limited to frequent; frequent bilateral pushing or pulling; frequent bilateral handling and fingering; no more than occasional exposure to no more than mild levels of pulmonary irritants such as fumes, odors, dusts, or gases; never be exposed to extreme cold; and no more than occasional exposure to unprotected heights.

(Tr. 23). Consequently, the ALJ found Hill unable to perform any past relevant work. (Tr. 31). At step five, the ALJ found Hill could perform other work that exists in significant numbers in the national economy. (Tr. 32). In support, a vocational expert testified that an individual of Hill's age, education, work experience, and RFC can perform work as a Security Guard, DOT #372.667-034, light; SVP 3, with 200,000 positions in the national economy. (Tr. 33).[6]

Thus, for purposes of the Act, the ALJ concluded Hill was not disabled from May 30, 2019, the alleged onset date, through February 26, 2021, the date of the decision. (Tr. 34).

## II.   Analysis

Hill's appeal presents the following questions for review:

(1)   whether remand is required because the ALJ derived authority from a commissioner who was subject to an unconstitutional removal protection;

(2)   whether substantial evidence supports the ALJ's finding that Hill had skills transferable to a security guard position;

(3)   whether substantial evidence supports the ALJ's finding that the security guard position is consistent with the RFC; and

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. The skills level refers to how long it takes to learn the job's necessary skills (either before or on the job), and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

(4)   whether substantial evidence supports the existence of jobs in significant numbers that someone like Hill can perform.

## A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of

fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The unconstitutional removal protection afforded to the Commissioner by statute does not warrant remand.

Relying on *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), Hill argues he is entitled to a new, de novo hearing before a different ALJ because the ALJ who adjudicated his claim derived his authority from a commissioner who was statutorily granted unconstitutional protection from removal by the President. (Doc. 28 at 39–41). In *Seila*, the Consumer Financial Protection Bureau was headed by a single individual serving a six-year term who the President could remove only for cause. The Court deemed this "for cause" limitation on the President's power to remove such an official a violation of the Constitution's separation of powers. *Seila*, 140 S. Ct. at 2191. Similarly, under 42 U.S.C. § 902(a)(3), the sole Commissioner of Social Security serves a six-year term and is removable only for cause. Thus, Hill argues this statute is an unconstitutional violation of the separation of powers, and that he was thereby "deprived of a valid administrative adjudicatory process." (Doc. 28 at 40).[7]

---

[7] To the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 28 at 42).

In response, the Commissioner correctly points to *Collins v. Yellen*, 141 S. Ct. 1761 (2021). There, the Court noted that simply because a removal provision is unconstitutional, it "does not strip [the commissioner] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23. Afterall, there is no issue with the Commissioner's presidential appointment. *Id.* at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.").[8] Even the *Seila* opinion that Hill relies on recognized this point. *See Seila*, 140 S. Ct. at 2208-11 (finding the unconstitutional removal provision severable from the statute). Thus, even when a removal provision is unconstitutional, a claimant seeking relief on that basis must show that the impediment to removal somehow resulted in "compensable harm." *Collins*, 141 S. Ct. at 1789; *see also id.* at 1790 (Thomas, J., concurring) ("[I]dentifying some conflict between the Constitution and a statute is not enough. [A claimant] must show that the challenged Government action at issue . . . was, in fact, unlawful.").

---

[8] Unlike Appointments Clause defects where the official does not enjoy proper authority to occupy office, agency action is not invalid simply because it can be traced back to an unconstitutional protection from removal. *See Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018); *Collins*, 141 S. Ct. at 1788. "[T]he unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" *Id.* at 1788 n.23.

Hill has made no effort to show the unconstitutional removal provision caused him harm or affected the ALJ's decision in any way—indeed, it is doubtful that he could make such a showing. As Justice Kagan reasoned:

> Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. . . . I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.

*Id.* at 1802 (Kagan, J., concurring). Nor does Hill show that but for the removal restriction, his claim would have been decided differently. Thus, Hill's constitutional challenge fails. Indeed, courts in this circuit (and across the country) have repeatedly rejected as meritless the separation-of-powers argument that Hill advances. *See, e.g.*, *Avalos v. Comm'r of Soc. Sec.*, No. 6:21-cv-290-LHP, 2022 WL 3867386, *3 (M.D. Fla. Aug. 30, 2022) (collecting cases); *Jackson v. Kijakazi*, No. 3:21-cv-242-SMD, 2022 WL 14519024, *5 (M.D. Ala. Oct. 25, 2022) (same). There is no reason to hold otherwise, and the argument warrants no further attention.

## C.    Substantial evidence supports the ALJ's finding that Hill had skills transferrable to a security guard position.

At the time of the ALJ's decision, Hill was three months shy of his sixtieth

birthday.[9] When utilizing the grids,[10] Hill was already a "person of advanced age" because he was fifty-five or older. *See* 20 C.F.R. § 404.1563(b). But if he was sixty, Hill would have risen into the next age category—a person of advanced age who is "closely approaching retirement age (age 60 or older)." *Id.* The ALJ conceded that, had Hill fit into this higher age category, it would have resulted in a finding of disability. (Tr. 32). Thus, under the regulations, Hill was in a borderline age situation. *See* 20 C.F.R. § 404.1563(b); *Moorhead v. Berryhill*, No. 3:18-cv-472-J-DNF, 2019 WL 2724022, *3 (M.D. Fla. July 1, 2019) (noting a borderline situation exists when a claimant is "within a few days to a few months" of reaching an older age category and using the older category would result in a determination that the claimant is disabled).[11]

When a claimant is in a borderline age situation, the ALJ must determine whether to apply the older-age category. This requires consideration of the overall impact of all factors in the claimant's case. *See* 20 C.F.R. § 404.1563(b); *see also*

---

[9] "[T]he claimant's age at the time of the decision governs the appropriate age category." *Hethcox v. Kijakazi*, No. 4:21-cv-405-GMB, 2022 WL 4225675, *4 (N.D. Ala. Sept. 13, 2022); *see also* POMS DI 25015.006(C)(1).

[10] With respect to age, the administration has adopted rules to account for the decreased likelihood of adjusting to a new job with increasing age that—in combination with other factors—provide a regulatory conclusion that there is an insufficient number of jobs to which the claimant could adjust. *See* 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, App. 2. These rules generate "grids," with each grid based on whether the claimant's RFC allows for the full range of occupations classified as sedentary, light, or medium on the physical exertion scale.

[11] Within "a few months" has been generally interpreted as within six months from the next age category. *See Moorhead*, 2019 WL 2724022, at *4; POMS DI 25015.006(B).

*Hill v. Saul*, No. 20-20316-civ, 2021 WL 4973515, *5 (S.D. Fla. Mar. 30, 2021) ("The grids are based not just on a person's chronological age, but they also take into consideration a person's RFC, education, and work experience."). Although the ALJ recognized Hill's borderline situation, he declined to apply the older-age category when making his disability determination. Instead, he found that use of the next category "is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work." (Tr. 32). Specifically, he relied on vocational-expert testimony that Hill's skills from his past relevant work as a corrections officer are easily transferred to a security-guard job. Hill claims there is no substantial evidence to support the ALJ's finding, but this argument fails.

Because Hill is on the borderline of age sixty, "special rules" apply. *See* 20 C.F.R. §§ 404.1563(e), 404.1568. These special rules provide, in pertinent part:

> If you are of advanced age but have not attained age 60, and you have severe impairment(s) that limits you to no more than light work, we will apply the rules in paragraphs (d)(1) through (d)(3) of this section to decide if you have skills that are transferable to skilled or semiskilled work.

20 C.F.R. § 404.1568(d)(4). [12] In turn, the referenced paragraphs provide that transferability "depends largely on the similarity of occupationally significant work activities among different jobs" and is most probable and meaningful among jobs in

---

[12] The ALJ found Hill has severe impairments, his RFC limits him to light work, and the occupation of security guard is classified as semi-skilled. Thus, this section applies, and the referenced paragraphs must be analyzed.

which: (i) the same or a lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved. 20 C.F.R. §§ 404.1568(d)(1)-(2). A complete similarity of all three factors is not necessary. 20 C.F.R. § 404.1568(d)(3). But ultimately, skills are transferrable to skilled or semi-skilled light work "only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

The ALJ concluded that Hill's acquired work skills from his past relevant work as a corrections officer are transferable to work as a security guard. Both jobs are semi-skilled, so a security-guard position requires a similar degree of skill. Further, the DOT indicates a corrections officer employs weapons, and Hill reported that his experience in this role required tools such as a duty belt, a stab-proof-vest, handcuffs, a baton, masks, and pepper spray. (Tr. 52, 286-87). Conversely, neither the DOT nor any vocational expert testimony reference a security guard requiring any tools. *See* DICOT § 372.667-034, 1991 WL 673100. So there is no indication of any meaningful difference in the tools that would be employed.

As for the similarity of skills and services, the vocational expert testified that a corrections officer requires organizational skills, customer-service skills, problem-solving skills, patience, insightfulness, persuasiveness, and high energy, as well as

the ability to manage time appropriately, organize people, be a team player, work in a group and independently, demonstrate proper behavior, and negotiate. According to the vocational expert, each of these skills are transferable to a security guard position. He also added that both jobs require patrolling grounds, examining doors and windows, identifying rule infractions, observing, and writing reports. Finally, the vocational expert specified any adjustment period would be minimal, equating to no more than what any other job would require. (Tr. 67-69).

Considering the foregoing, substantial evidence supports the ALJ's finding that Hill's skills are transferable. A comparison of the two jobs fits neatly within the regulatory guidelines. Plus, both jobs are in group 372.667 of the DOT, which is significant because the DOT groups different occupations together based on their similarities. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020) (observing that "the DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number"). But more importantly, vocational expert testimony supports the ALJ's finding. This is enough. *See Sola v. Comm'r of Soc. Sec.*, No. 5:20-cv-145-PRL, 2022 WL 2758133, *4 (M.D. Fla. Feb. 14, 2022) ("The vocational expert's testimony regarding the transferability of skills related to Plaintiff's past relevant work [as a corrections officer], and his testimony that the skills of 'protecting individuals' and 'understanding individual's needs' would transfer to other occupation constitutes substantial evidence on which the ALJ could

rely."); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (holding that vocational expert's testimony "as to the existence of such jobs and to the claimant's ability to adapt his skills to perform them" constituted substantial evidence supporting the ALJ's decision).

In protesting the ALJ's decision, Hill offers nothing to counter the ALJ's finding. He makes no attempt to distinguish the two jobs or even suggest that work as a security guard requires more "vocational adversities." Without any such showing, remand is not warranted. *See Bowman v. Colvin*, No. 1:15-cv-8-MP/CAS, 2015 WL 13743800, *15 (N.D. Fla. Aug. 20, 2015), *report and recommendation adopted*, No. 1:15-cv-00008-MP-CAS, 2015 WL 5898313 (N.D. Fla. Oct. 8, 2015) ("Absent a showing of any additional adversities justifying use of the higher age category, the adjudicator will use the claimant's chronological age even when the time period to the next higher category is only a few days.").

Instead of providing a substantive argument, Hill cites language in the Program Operations Manual System ("POMS") which he claims "directs a decisionmaker in a case with a limitation in a light RFC to occasional reaching to 'use this RFC limitation to support an allowance under the borderline age criteria.'" (Doc. 24 at 13 (citing POMS DI 25015.006)). Because the RFC limits Hill to light work and occasional overhead reaching, he believes this language required the ALJ to place him in the next age criteria. But this argument does not withstand scrutiny.

The cited language is merely taken from an example in the POMS intended to illustrate a scenario in which a claimant's limitations can be considered for borderline age without "double weighing" them. *See* POMS DI 25015.006. Further, the example does not suggest, as Hill does, that an RFC limitation to light work and limited overhead reaching will automatically result in an allowance under the age criteria. It merely indicates that considering both limitations can be used "to support" an allowance "without double weighing." *Id.* And the hypothetical claimant in the example had "unskilled" past relevant work, whereas Hill's past relevant work is semi-skilled. So this example is not even comparable.

But even if this POMS provision was on point, the ALJ's purported failure to adhere to it is of no consequence. Although the POMS has persuasive value and "warrants respect," its guidance and illustrations are not products of formal rulemaking. *See Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 372 (2003). Thus, it does not have any force of law. *See Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003); *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 n.1 (11th Cir. 2018); *Rodriguez v. Comm'r of Soc. Sec.*, 737 F. App'x 514, 517 (11th Cir. 2018); *Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786–87 (11th Cir. 2011). As such, even if the ALJ's analysis failed to comply with the POMS guidelines, it would not entitle Hill to relief. *See Wells*, 430 F. App'x at 787 (holding that "because the POMS does not have the force of law

and a violation of the SSA's internal guidelines does not entitle [the claimant] to the relief she seeks, we need not address whether the Commissioner adhered to the POMS"); *see also Wiley v. Comm'r of Soc. Sec.*, No. 2:20-cv-513-SPC-NPM, 2022 WL 564868, *5 (M.D. Fla. Feb. 8, 2022) (the ALJ's failure to adhere to POMS "does not constitute legal error"); *Crawford v. Kijakazi*, No. cv 321-052, 2022 WL 18232295, *5 (S.D. Ga. Dec. 8, 2022) ("While Plaintiff cites the [POMS] in support of his argument, this argument fails because POMS is not a regulation and has no binding force here."); *Shue v. Saul*, No. 3:18-cv-512/LAC/EMT, 2019 WL 3769971, *6 (N.D. Fla. July 23, 2019), *aff'd sub nom. Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906 (11th Cir. 2020). What matters is that the ALJ's finding is consistent with the applicable regulations, which it is here. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991) (observing that although the POMS directives are useful in social security disability cases, ultimately the facts and the law must comply with the Code of Federal Regulations, not POMS).

Next, Hill cites to *Gurbel v. Astrue,* No. 5:07-cv-243-OC10-GRJ, 2008 WL 4371346, *4 (M.D. Fla. Sept. 22, 2008). But this case is inapposite. There, the court found the ALJ failed to make the requisite findings that the claimant's skills were transferrable. *Id.* at *4. Not so here. At the hearing, the ALJ devoted almost his entire questioning of the vocational expert to confirming the transferability of skills. Plus, the vocational expert, without prompting, explained that any level of adjustment

would be minimal, so Hill's assertion that the ALJ failed to elicit information on this matter is misplaced.

To the extent there are specific questions Hill believes the ALJ failed to ask, he fails to raise them or demonstrate how any such questions would have altered either the vocational expert's testimony or the ALJ's decision. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (finding claimant could not show she suffered prejudice "because there is no evidence [the] ALJ's decision would have changed in light of any additional information"). So remand for additional inquiry would be useless. *See Robidou v. Berryhill*, No. 8:17-cv-1914-T-AEP, 2018 WL 6061446, *4 (M.D. Fla. Nov. 20, 2018) ("Courts have declined to remand when it would merely amount to a 'wasteful corrective exercise' or an 'idle and useless formality.'" (citing *N. L. R. B. v. Wyman-Gordon Co.*, 394 U.S. 759, 767 n.6 (1969); *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. 1981)).

**D.    Substantial evidence supports the ALJ's finding that the security guard position is consistent with the RFC.**

The RFC limits Hill to "no more than occasional exposure to no more than mild levels of pulmonary irritants such as fumes, odors, dusts, or gases." Hill argues this prohibits "even occasional exposure to *more-than-mild* levels of fumes, odors, dust, or gases." Fair enough. He then cites to SSR 85-15, which suggests that "[w]here an individual can tolerate *very little* noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are

entirely free or irritants, pollutants, and other potentially damaging conditions." (Doc. 24 at 22 (emphasis added)). Thus, the argument goes, because very few job environments are entirely free of irritants, the RFC limitation would rule out any work as a security guard.

The social security ruling does not support Hill's contention. It only suggests that an individual who can tolerate "very little" dust would have difficulty working. But nowhere does it compare "very little" levels of dust with "occasional exposure" to "mild levels," and Hill provides nothing to equate the two. Moreover, had Hill continued reading the ruling, the very next line states: "Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS." SSR 85-15. And since a vocational expert (or specialist) testified at the hearing on this very issue, the ALJ's approach was consistent with this ruling.

Hill's use of the Occupational Information Network ("O*Net") is also unavailing. He relies on this source for the proposition that "only 26% of security guards reported never being exposed to contaminants." (Doc. 24 at 23). But whether any portion of the other 74% experienced anything more than occasional exposure to mild levels of contaminants is entirely unsubstantiated. What is more, O*Net is not an authoritative source, and the Commissioner has not taken administrative notice of it. So not only is this statistic unpersuasive, it is also a red herring because

the ALJ was not required to address it. *See* 20 C.F.R. § 404.1566(d); *Tisdale v. Soc. Sec. Admin., Comm'r*, 806 F. App'x 704, 711 (11th Cir. 2020) ("The regulations do not mention O*Net as a source of reliable data or require the agency to compare data from the DOT to O*Net data."); *Perez v. Kijakazi*, No. 21-cv-23740, 2022 WL 17094932, *9 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 21-23740-civ, 2022 WL 17093619 (S.D. Fla. Nov. 21, 2022) (noting that ALJ has no affirmative duty to resolve conflicts with sources outside the DOT) (citing *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019)). Besides, Hill never mentioned this O*Net statistic to the ALJ or objected to the vocational expert's testimony on these grounds. So he cannot do so here for the first time. *See Williams v. Comm'r of Soc. Sec.*, No. 8:21-cv-707-MRM, 2022 WL 4354850, *5 (M.D. Fla. Sept. 20, 2022) ("[T]he Court is not satisfied that any of the information in the O*Net, when it was presented for the first time to this Court, provides a basis to find that the VE's testimony did not constitute substantial evidence or that the ALJ's decision is unsupported by substantial evidence.").[13]

The vocational expert advised that the DOT does not mention "mild" exposure

---

[13] Hill also cites the Occupational Requirements Survey ("ORS") in an attempt to establish a conflict between the RFC and the vocational expert's testimony. But this argument fails for the same reasons. *See, e.g.*, *Mesa v. Kijakazi*, No. 21-20424-civ, 2022 WL 4369733, *14 (S.D. Fla. May 11, 2022), *report and recommendation adopted*, No. 21-20424-civ, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022) ("The Undersigned agrees with the Commissioner that [ORS data] cannot serve as a basis for remand because [claimant] did not confront the VE with this data during the hearing.").

to respiratory irritants. (Tr. 70, 74). So Hill argues the vocational expert failed to provide any basis for his opinion that a security guard position involved no more than occasional exposure to no more than mild levels of pulmonary irritants. (Doc. 24 at 23). This argument too fails. A vocational expert relies on his education and experience in formulating his opinions. And although an ALJ must resolve conflicts between a vocational expert's testimony and the DOT, when the DOT is silent on a limitation, like here, there is no conflict. *See Ledkins v. Berryhill*, No. cv 18-00011-B, 2019 WL 1294006, *9 (S.D. Ala. Mar. 21, 2019) ("[W]hile the ALJ in this case had an affirmative duty to identify any apparent conflicts between the VE's testimony and the DOT and to resolve them, courts have uniformly held that the DOT's silence on a job requirement or limitation does not suggest the existence of a conflict between the DOT and the VE's testimony; rather, it indicates the absence of a conflict." (internal citations omitted)). Likewise, when the DOT is silent on an issue, an ALJ "has greater leeway to rely on the experience and testimony" of a vocational expert. *Gordon v. Berryhill*, No. 3:16-cv-130, 2017 WL 5759940, *4 (W.D.N.C. Nov. 28, 2017). Thus, substantial evidence supports the ALJ's finding that a security guard job complies with Hill's RFC.

### E.   Substantial evidence supports the ALJ's finding that security guard jobs exist in significant numbers in the national economy.

While the claimant always bears the burden of proving that he is incapable of performing any substantial gainful activity, the administration has the initial burden

at step five of the sequential analysis to show that there are a significant number of jobs that can be performed by someone with the claimant's age, education, work experience, and RFC. To satisfy this burden, the administration routinely relies on the opinions of vocational experts who testify during the ALJ hearings.

A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). And because an ALJ may rely upon a vocational expert's knowledge or expertise, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012), we are only concerned with whether the vocational expert's testimony constitutes substantial evidence and not whether substantial evidence supports the vocational expert's testimony. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).

The Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (same). Rather, a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required. *See Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011). So, a vocational expert's number-of-jobs

testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The regulations do not require any degree of precision, and the available data in this area is imperfect. Moreover, the traditional rules of evidence do not apply, and opinion testimony in this kind of proceeding is not subject to litigation-like scrutiny. But a vocational expert's testimony will fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology contains several significant mistakes and thereby lacks a "baseline of reliability." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285 (11th Cir. 2020).

The ALJ included the vocational expert's resume as part of the record, which reflects he is well qualified with over forty years of experience in the vocational rehabilitation field and has been a vocational expert since 2013. He also holds a master's degree in rehabilitation counseling from Boston University. (Tr. 342-43). Based on his experience and review of the literature, the vocational expert opined during the hearing that that there were 260,000 security-guard jobs in the economy that could be performed by someone of Hill's age, education, work experience, and RFC. (Tr. 68). However, in light of Hill's RFC limitation that precludes any exposure to extreme cold (which the DOT does not address), the expert reduced this number to roughly 200,000 jobs and opined the number likely falls somewhere

between 175,000 and 210,000. (Tr. 70, 71, 76). Represented by counsel at the hearing, Hill objected to the vocational expert's formulation of these numbers due to the lack of any specific formula utilized. (Tr. 77, 78). He raises the same argument here. (Doc. 24 at 25-29).

Hill's argument fails for two reasons. First, while he complains that the vocational expert did not supply a detailed formula for arriving at 200,000 warm-weather security officer jobs, none is required. *See Baltierra v. Chater*, 70 F.3d 1268 (5th Cir. 1995) ("Baltierra complains that the vocational expert 'had no formula' for making this determination; but, none is required."). As noted above, a vocational expert's recognized expertise provides the necessary foundation for his or her testimony. Here, the vocational expert relied on his own expertise and consulted sources such as the Occupational Requirements Survey, SkillTran, Job Browser Pro, and other information from the Bureau of Labor Statistics. (Tr. 71). He also consulted with five other vocational experts and even reviewed job postings on websites such as Indeed and Monster.com. This is more than sufficient.

Further, the vocational expert was under no obligation to reduce the number from 260,000 to 200,000. As the vocational expert explained, while extreme cold is noted in the DOT's classification of jobs when it is a job condition, the DOT does not identify extreme cold as a condition for the security-guard position. (Tr. 70, 74). Either way, the vocational expert could have maintained the original 260,000 figure

and remained consistent with the DOT. Thus, the vocational expert's testimony constitutes substantial evidence to support the existence of jobs in significant numbers that someone like Hill can perform.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk should be directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

Respectfully recommended on January 31, 2023.

_Nicholas P. Mizell_
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**